DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

Albert D. Thrower,                           )
                                             )     CASE NO. 1:03 CR 341
            Petitioner-Defendant,            )     CASE NO. 1:05 CV 553
                                             )
      v.                                     )     MEMORANDUM OPINION
                                             )
United States of America,                    )
                                             )
            Respondent-Plaintff.             )
                                             )


I.  Introduction


        The petitioner has filed, in a pro se capacity, an action for habeas relief under the provisions of

28 U.S.C. §2255.  The criminal prosecution in this case began with the filing of a complaint against the

petitioner on July 24, 2003.  The preliminary hearing and the detention hearing began on July 31, 2003

before Magistrate Judge William Baughman and concluded on August 1, 2003 with a bindover to the

Grand Jury.  Initially, bond was set for the petitioner and the appearance bond was posted and the

defendant released.  Subsequently, on August 19, 2003, an indictment was returned against the

(1:03 CR 341)

petitioner on July 19, 2003 listing 32 counts[1].  On August 22, 2003, the petitioner was remanded to

the custody of the United States Marshal and remained there throughout the trial proceedings.

During the Preliminary/Detention Hearing conducted on July 31 and August 1, 2003, the

petitioner  was represented by Robert Toll Lynch, Esq.

On August 21, 2003, the petitioner filed a pro se motion requesting a speedy trial.  (Docket

#18).

The case was initially assigned to District Judge John R. Adams.  On October 6, 2003, the

case was transferred from Judge Adams to the undersigned Judge.  The trial began, as scheduled, on

October 14, 2003 and concluded on October 23, 2003.  The defendant was convicted on all counts 1-

32.  The defendant filed a motion for a new trial.  The motion was denied by an order published

December 18, 2003. (A copy of the Court's order denying the motion is attached hereto as Appendix

1).

---

[1] The 32 count indictment alleged that the defendant conspired to commit federal offenses, falsified records
in bankruptcy, made false oaths, committed bankruptcy and mail fraud, and further possession of a stolen social
security card.

The government's succinct brief in opposition summarizes the petitioner's criminal conduct  as follows:

Generally, the defendant organized and directed a fraudulent scheme whereby he targeted homeowners
facing foreclosure sales of their homes.  He directed the mailing of postcards to these homeowners promising that
their homes could be saved.  He received fees from these homeowners for preparing bankruptcy petitions and parts
of bankruptcy statement of financial affairs.  He did not disclose on these bankruptcy documents that he prepared
them, and he falsely completed an answer in the "statement of financial affairs" by stating that no fees had been
paid.  He further indicated to these homeowners that they should not inform the Court that the defendant's company
had prepared the documents.  A chronological summary of the events leading to the defendant's election to
represent himself follows.

2

(1:03 CR 341)

On February 11, 2004, the Court conducted the sentencing hearing and sentenced the

defendant to a term of 90 months as reflected in the sentencing entry attached hereto as Appendix 2.

On February 17, 2004, the defendant filed a Notice of Appeal with the Sixth Circuit Court of

Appeals.  On September 3, 2004, the petitioner's appeal was dismissed for  want of prosecution.[2]

This action seeking habeas corpus relief  was filed on February 10, 2005.  On March 2, 2005,

the government filed a brief in opposition.

## II.  State of the Pleadings

The petitioner's pleadings are extensive.  The petition filed on February 10, 2005  numbers 86

pages plus multiple appendices.  (Docket #1).  On March 2, 2005 the government filed a succinct brief

in opposition and it numbers 26 pages.(Docket #5)  On March 28, 2005,  the petitioner followed with

a 19 page response brief in opposition, citing for the first time his reliance on United States v. Williams,

372 F.3d 96 (2nd. Cir. 2004).  (Docket #6).  On March 31, 2005 the petitioner filed an amended

response brief in opposition and numbering 22 pages along with exhibits including the transcript of his

sentencing hearing.  (Docket #7).  On April 28, 2005 the petitioner filed a motion for leave to

supplement filings.  (Docket # 9)  The primary thrust of the April 28, 2005 filing was to cite United

States v. Williams, supra.

On May 17, 2005, the petitioner filed a motion for leave to grant motion for discovery.

(Docket #10).   The discovery sought focuses on the conduct of petitioner's initial counsel Robert Troll

---

[2]  At the conclusion of the sentencing hearing, the Court advised the petitioner of his appellate rights and
strongly suggested appointment of counsel to assist the petitioner in prosecuting his appeal.  The petitioner
declined the Court's offer indicating his desire to represent himself in his continuing pro se capacity on appeal.

(1:03 CR 341)

Lynch.  The government filed a brief in opposition to the petitioner's discovery request .  (Docket #11).

### III.  Description of the Alleged Conduct by the Petitioner

A more detailed description of the defendant's conduct is contained within the Presentence Report.  The Court finds the description to be accurate.  Consequently, a copy of the offense conduct is attached hereto as Appendix 3.

### IV.  The Restrictions on Habeas Review Require a Summary  Denial of  Petitioner's Claims Other Than the Issues Relating to the Sixth Amendment Right to Counsel

An action based on the provisions of 28 U.S.C. 2255 is not a substitute for direct appeal. After clearly rejecting the district court's invitation to appoint appellate counsel, the petitioner failed to perfect his direct appeal.  Two of the grounds, six and seven, raised by the petitioner could have been raised on direct appeal[3].  An action based on the provisions of 28 U.S.C. 2255 is not a substitute for direct appeal.

The petitioner had the benefit of a transcript of his trial, but failed to perfect his appeal. "[I]t is well settled . . .that a motion to vacate is not a substitute for appeal." United States  v. Duhart, 511 F.2d 7, 8 (6th Cir. 1975) (internal quotations omitted) (quoting  DiPiazza v. United States, 471 F.2d 719, 720 (6th Cir. 1973).  When a defendant has defaulted a claim by failing to raise it on appeal, the

---

[3] Ground #6 alleges: The trial court committed error when it did not order the Petitioner's $2,300 be turned over to him to hire an attorney of his choice, to assist in determining whether his "advice of counsel" defense was viable and/or to represent him at trial.

Ground #7 alleges: Trial court erred when it used an alleged conviction in Petitioner's criminal history that were void as a matter law.

4

(1:03 CR 341)

claim may be raised under 28 U.S.C. 2255 only if the defendant can demonstrate either good cause

and actual prejudice or that he is innocent of the crime charged.  Goode v. United States, 305 F. 3d

378, 382 (6th Cir. 2002) (citing Bousely v. United States, 523 U.S. 614, 622, (1998).  In present case,

Petitioner has failed to claim or establish any of these reasons for his procedural default and therefore

Grounds 6 and 7 are barred under 28 U.S.C. 2255.

V. The Petitioner's Multiple Grounds Contending that he was
Denied the Effective Assistance of Counsel

The primary claim initiated by the petitioner is that he was denied the effective assistance of

counsel and that therefore his conviction of the 32 counts should be set aside and a new trial ordered.

Alternatively, the petitioner now appears to move for remand for re-sentencing on the authority of

United States v Williams , supra[4].  The petitioner elected to represent himself as more thoroughly

outlined in the following passages.  The petitioner now asserts that his rejection of counsel was

predicated on his belief that he was entitled to a defense anchored in "advice of counsel" to

demonstrate that his extensive conduct regarding the filing of bankruptcy petitions on behalf of

individuals facing foreclosure of the bankrupt's home did not violate the law.[5]   The trial of the

petitioner was on a fast track given his incarceration and his demand for a speedy trial.  As a

---

[4]  The petitioner's original memorandum in support of his petition attached as Exhibit H page 1, which is the first page of an October 6, 2003 letter addressed to the petitioner in his pro se capacity.  The letter purports to offer the petitioner the opportunity to entered into a plea agreement which concluded with the statement: "The government is prepared to enter into a plea agreement stipulating an offense level of 14, following credit for acceptance of responsibility.  Assuming your criminal history category is III, the sentencing guideline range under this proposal would be 21 - 27 months.

[5]  The conduct of the petitioner in operating his business is described in detail in Appendix 3.

5

(1:03 CR 341)

consequence, a final ruling on the issue of whether petitioner's initially retained counsel Robert Troll

Lynch would be allowed to testify in support of the defense of "advice of counsel", was not made until

after the government rested its case in chief.  The court ruled that the "advice of counsel" defense would

not be permitted at which time the petitioner elected to present no evidence.[6]

---

[6] The Court's ruling on the denial of the advice of counsel defense was stated orally and then reduced to an opinion which stated in its entirety as follows:

The defendant is charged in a multi-count indictment with one count of conspiracy to defraud the government and numerous other counts of falsification of bankruptcy records, bankruptcy fraud, false oath in bankruptcy proceedings, mail fraud, and possession of stolen identity.

Representing himself, the defendant asked this Court to include in its instructions to the jury an instruction on the defense of "advice of counsel," claiming that he acted as he did only after consulting with counsel, specifically, Mr. Robert Lynch, who represented the defendant early on in these proceedings until he withdrew his representation.  Defendant also sought to call Mr. Lynch as a witness in his case.  The government opposed both the requested instruction and calling Mr. Lynch as a witness, arguing that defendant's consultation with Mr. Lynch, if any, came too late to meet the test for an advice-of-counsel instruction.

On October 21, 2003, outside the presence of the jury and after the defendant waived his attorney-client privilege for the record, Mr. Lynch was questioned under oath by both the Court and the defendant.  Mr. Lynch did not have a clear recollection of when precisely the defendant had first contacted him seeking representation and advice.  He did, however, have a letter dated July 11, 2003, wherein he made reference to a meeting he had with the defendant sometime prior to that date.  He also believed he may have spoken to the defendant by telephone a couple times prior to July 11, 2003; but he has no independent recollection of when that might have been and has no record of any phone conversations.  Upon questioning by the defendant, Mr. Lynch agreed that the defendant had faxed him some materials on June 10, 2003,[1] which included the defendant's personal legal research conclusions about which the defendant was seeking Mr. Lynch' advice.[2]  The government points to the fact that as early as March 17, 2003, the defendant prepared a bankruptcy petition for Anthony S. Papa (See Govt. Exh. 15).  Mr. Lynch testified that he is certain the defendant did not consult with him prior to March 17, 2003.

> [1] The fax copy is not clear, it might say either June 10 or June 18.  The Court will assume it is the earlier date for purposes of this discussion.

> [2] Defendant was arrested on July 24, 2003 and had his first appearance before a magistrate judge that same day.

The elements of the reliance-on-advice-of-counsel defense are (1) full disclosure of all pertinent facts to counsel, and (2) good faith reliance on counsel's advice.  United States v. Lindo, 18 F.3d 353, 356 (6th Cir.1994).  Given the factual scenario developed above, defendant fails to meet either of these two requirements.

Accordingly, the Court will not permit Mr. Lynch to testify, nor will there be any instruction regarding any

(continued...)

6

(1:03 CR 341)

During the initial stages of the prosecution, the petitioner was represented by Attorney Robert Troll Lynch. (See transcript of the Preliminary/Detention Hearing held on July 31 and August 1, 2003.) On September 10, 2003 the petitioner filed a motion (Docket #24), seeking to represent himself and which stated in its entirety as follows:

> Now comes the def't pro se and serves his <u>Notice</u> that he will be representing himself.  Def't knowingly waives any claims in re this waiver, per 6th Amendment, USCA, See <u>Faretta v California</u>.
>
> Def't is a 3rd Yr. Law Student, experienced in trial Procedure.  Def't <u>WAIVES</u> any hearing in re this issue.  Se Ex A: Aff't in Support.[7]

Six days later on September 16, 2003, Attorney Lynch filed a motion (Docket #29) to withdraw as counsel and the motion stated in its entirety as follows:

> Now comes defense counsel, Robert T. Lynch who hereby moves this Honorable Court to withdraw as counsel for the Defendant indicated above for the following reasons:
>
> > Defendant has indicated that "advice of counsel" will indeed be a potential defense in his case, and therefore present counsel is obliged, both by ethics rule and case law, to withdraw as counsel for the defendant.

---

[6] (...continued)
advice-of-counsel defense.

(Doc. #129 at 2-3) (footnotes in original).

[7] The motion was accompanied by an affidavit in support which stated in its entirety as follows:
1) His Waiver of Counsel is knowing, intelligent, voluntary.
2) Def't waives any claims to same
3) Def't is 3rd yr law student, experienced in Trial Procedure.
4) Def't waives any hearing on issue.

7

(1:03 CR 341)

On September 22, 2005, Judge Adams addressed both motions in a protracted hearing. (See

Transcript of the Hearing--Docket # 123).    Mr. Lynch, in explaining his motion to withdraw advised

the Court, stated:

> COURT:              Mr. Lynch, why don't you state for the record your
> basis for seeking to withdraw as defense counsel in this
> matter, please.
>
> MR. LYNCH:  <u>Early on in this case, it seems the defense, quote unquote, advice
> counsel would not be applicable.</u>  But as the case progressed and as I
> had more conferences with the defendant, it became obvious that he
> did want to, after all, although he did not say this initially, assert that
> defense.
>
> Certainly the defendant is here to elaborate on why his change
> of mind, if this court would want to inquire, but basically in a
> nutshell, that's it.  <u>There may be a need for me to testify as to
> my pre-indictment, quote, advice of counsel defense, close
> quote</u>.  And if that's the case, then I can't serve as defense
> counsel.  (Emphasis added)

Before ruling on Mr. Lynch's motion, the court questioned the petitioner

concerning his request to represent himself in the following colloquy:

> THE COURT:  Well, it's going to take a few moments while the copies are being
> made.  It's rather voluminous but, Mr. Thrower, let's address what you
> captioned as a notice of termination of counsel of record, and notice
> that you will be representing yourself.
>
> Is that still your desire, sir?

(1:03 CR 341)

THE DEFENDANT:    Yes it is, your Honor.  Under Fomar (sic) versus California[8], I have a absolute right to represent myself. And I'm absolutely positively asserting that right.

And as far as those motions, they were mailed, they were placed in the mail.  There is a motion in your court to serve all copies of any orders on me, which there has not been a ruling on in reference to that.

And the advice of counsel is, you know, I never – I never stated – I mean, maybe there is hearings going on without my presence, but there is nothing on the record which I've been trying to get these transcripts for the two items that        I've been in the court, three times, nothing on the record waiving any defense of advice of counsel.  And if there is any type of assertion, then it was done without my knowledge.  Because that was my position from day one is advice of counsel.[9]

---

[8]  It is apparent that the petitioner was referring to Faretta v California, 422 U.S. 806 (1975) which established a defendant's right to represent himself in a criminal trial rather than by either a retained or appointed lawyer.

[9]  Earlier in the hearing on September 22, 2003, AUSA Thomas Getz expressed his objection to the idea that an "advice of counsel" defense was being considered.  AUSA Getz stated :

MR. GETZ:    Yes, your Honor, thank you.

And I would note for the record that Mr. Lynch's motion does state the only reason moving the court to withdraw as counsel for the defendant is on the basis of raising an advice of counsel defense.

The government has specifically, both by verbally and by letter, requested an indication from the defendant in the first week of August as to whether or not an advice of counsel defense was going to be raised.  And in a responsive letter from Mr. Lynch, the government was informed at that time that an advice of counsel defense was not going to be asserted, either by this defendant or by another target that Mr. Lynch is also representing, which raised a whole other issue, conflicts of interest, that we were addressing at that time.

We had specifically, in our letter, indicated that if it was determined at any time that the defendant intended to raise that defense that then to please so advise us so that we could prepare accordingly.

The government is going to object now to the defendant withdrawing at this late of a
(continued...)

9

(1:03 CR 341)

THE COURT: We'll address that in a second.  I want to address right now whether or not you understand the consequences and/or implications of proceeding in a pro se fashion.

You know, you've just stated it.  You have a constitutional right to be represented by an attorney at every stage of these proceedings.

You understand that do you not?

THE DEFENDANT:  Yes, I do.

THE COURT: Do you understand if you are unable to afford an attorney, the court will appoint one for you?

You understand that.

THE DEFENDANT:  That's correct.

---

[9] (...continued)

date, about three weeks prior to trial in this case, having already indicated to the government that such a defense was not going to be raised.

THE COURT:     You are objecting to – you mean Mr. Lynch's withdrawing?

MR. GETZ:     Mr. Lynch's withdrawing on that basis, which is the only basis he's raising.  We don't believe at this time it would be proper for him to testify relative to that.  Certainly the government would be requesting a voir dire hearing prior to trial to determine whether or not he's competent to testify on that basis, based upon whatever the representations were that the defendant made to him seeking that advice, which may or may not negate his abiity to even testify as to that matter.

The problem that this poses at this juncture, this close to trial, when it should have been easily determined, particularly when the government raised the question and the issue specifically very early on for this very reason, they should have been able to determine at that time whether or not that was going to be a defense or not.  It's not that difficult to make that determination based upon this very lengthy and very detailed indictment.

The question was specifically asked.  We were told that defense was not going to be raised.  We asked to be advised at any time they made the determination that it would be raised, and this is the first I'm hearing of it, is a copy I received from the court today of this motion, and that being the basis for it.

10

(1:03 CR 341)

THE COURT:  Do you have funds to retain counsel to represent you in this matter?

THE DEFENDANT:   No, I don't.

THE COURT:  Do you wish the court to appoint an attorney to represent you in this case?

THE DEFENDANT:   No I don't.

THE COURT:  Sir, you understand if I do not appoint counsel for you, there are things you have to understand.

First of all, before I address those issues, have you ever studied law?

THE DEFENDANT:   Yes, I've studied law.

THE COURT:  How much have you studied?

THE DEFENDANT:   I've studied quite a bit of law.

THE COURT:  Explain to me the extent of your studies, please?

THE DEFENDANT:   I'm in the process – I'm a third year law student in a California law school right now.  And I've, you know, I've had a legal research company that I research law out for individuals.  And I've been studying law for the last 15 years.

THE COURT:  I'm sorry, go ahead.  I didn't mean to interrupt.

THE DEFENDANT:   I've won a number of appellate cases.  I've done a tax trial up in Cleveland last fall, and I'm familiar with the rules, Federal Rules of Civil Procedures, the Rule of Evidence.  And I have no problem to know that I could conduct myself in the rules of court.

THE COURT:  You say you studied law in some California school.  Is that by the way of internet or an accredited law school here in the State of Ohio?

11

(1:03 CR 341)

THE DEFENDANT:   It's not accredited here but it allows you to take the California
bar.  It is accredited out there.

THE COURT:  What is the extent of your studies?  Have you studied criminal
procedure, criminal law during that course of studies?

THE DEFENDANT:   Yes, I have.

THE COURT:  Have you ever represented yourself in a criminal procedure, criminal
action?

THE DEFENDANT:   No, I haven't.

THE COURT:  You understand you are charged with, I believe there are 32 counts in
this indictment?

THE DEFENDANT:    That's correct.

THE COURT:  And those charges are extremely detailed, complicated, involving
falsification of bankruptcy records, bankruptcy fraud, false oaths in
bankruptcy proceedings, mail fraud.

You understand these are not a simple charge of simple set of
offenses that are –

THE DEFENDANT:   What I understand, and I'll reserve the motion that I have to
dismiss the indictment to, because the law is very clear on that.
You have a copy of what was filed September 10th.  I don't
know if you've had an opportunity to look it over.  But this
statute falls within a civil statute, every time you sign your name
there is a civil statute with civil penalties. . And even the U.S.
Attorney itself couldn't come up with any type of alleged
bankruptcy petition preparer who had ever been charged under
this statute.

So I'm moving to dismiss the indictment on that ground which
Mr. Lynch, he was instructed to dismiss on that ground.  And
so a review of the record, there hasn't been anything in

12

(1:03 CR 341)

reference to that.  And according to the Federal Rules of Civil Procedure, all you have to do is drop it in the mailbox.

As far as service of Mr. Getz, I need to have somebody swear to that, when it's already in the court and that that was dropped in to him.

In reference to the motions then, I'll have them re-served certified mail, so where it comes down it has to be certified mail, certified mail, that's what it's going to have to be about.

THE COURT:  Sir, I have just caused a copy to be made of all the motions, that I have provided to the government in an abundance of caution and fairness to the government.  So those motions, he can prepare a response timely to address this matter.

Mr. Getz, are you able to outline for us the possible penalties that may accrue to the defendant in this case if he is indeed convicted on these counts, please?

MR. GETZ:  I believe I can, your Honor.  I should have that in my file. Some of them I know by memory, others I would be guessing.

For the violation of Title 18 United States Code, Section 157, which is the bankruptcy fraud related offense, the maximum potential penalties under statute are five years imprisonment, a $250,000 fine, and three years of supervised release to follow the incarceration.

For the violation of Title 18, United States Code, Section 1519, which is falsification of bankruptcy records, the statutory maximum statutory penalty is 20 years of imprisonment, a $250,000 fine, and five years of supervised release.

For the violation of Title 18, Section 152 of the United States Code, false oaths in a bankruptcy proceeding, the statutory maximum penalty is five years of imprisonment for each counsel, plus a $250,000 fine, three years of supervised release.

13

(1:03 CR 341)

For the violation Title 18, United States Code, Section 1341, mail fraud, the statutory penalty is 20 years imprisonment, a $250,000 fine, and five years supervised release.

For the offense involving possession of stolen identification documents, under Title 18, United States Code, Section 1028, the maximum possible statutory penalty is 15 years imprisonment, a $250,000 fine, and three years of supervised release.

And for the conspiracy offense, under Title 18, United States Code, Section 371, the maximum statutory penalty is five years imprisonment, a $250,000 fine, and three years of supervised release.

And, of course, there is a hundred dollar special assessment that's mandatory for each of those counts.

THE COURT: Mr. Thrower you understand those are the possible penalties the court could impose?

THE DEFENDANT:   Yes, I do, your Honor.

THE COURT: Let me finish.

You understand those could be imposed concurrently or consecutively, sir?  Do you understand that?

THE DEFENDANT:   Well, it's my understanding under the rule they merge all the offenses.  That's what I understand, according to the Federal Guidelines, so –

THE COURT: So you think under the guidelines these would all merge and potentially your maximum exposure is what, 20 years?

THE DEFENDANT:   Well, that one to 20 years instead of 20 years.  That's my understand.

14

(1:03 CR 341)

THE COURT: Let puts it this way, sir.  Would you not agree with me that assuming these were to merge, assuming the maximum is 20 years, that's a long period of time, is it not sir?

THE DEFENDANT:   Well, you know, you would have to put that on the guideline table and then you would have to apply to that –

THE COURT: You are right, I would have to apply the table.  And you have a prior record, do you not, sir?

THE DEFENDANT:   Well, I plead the Fifth Amendment.

THE COURT: You already filed a motion that put me on notice of your prior record and you asked me to exclude that of presentation to the jury, which is an issue before me.

But for purposes of our discussions here today, it would certainly factor in in determining what guidelines I would apply in this case.

Would they not, sir?

THE DEFENDANT:   I guess that's correct.

THE COURT: I guess –

THE DEFENDANT:   That's correct.

THE COURT: I guess the point of this discussion is, I want you to understand that is not a matter that should be taken lightly.  You face a long, long period of incarceration if a jury is convinced of the truth of these charges.

THE DEFENDANT:   Well, I understand that.

THE COURT: Okay.  Well, I want to make sure you do, because I want you to understand that if you represent yourself in this case, there are grave grave consequences should things not go well for you at trial.  And I want to make sure you understand if you represent yourself further, you

15

(1:03 CR 341)

are on your own in this case.  I can't advise you, I can't tell you how you should try your case, you will be representing yourself.

THE DEFENDANT:   That's correct.

THE COURT:  You understand that?

THE DEFENDANT:   Yes.

THE COURT:  You indicate some familiarity with the Federal Rules of Evidence.  How familiar are you with those rules, sir?

THE DEFENDANT:   I'm familiar with them.

THE COURT:  Have you ever tried a case in open court before a jury?

THE DEFENDANT:   No, I haven't.

THE COURT:       Are you familiar with the Rules of Criminal Procedure, The Federal Rules of Criminal Procedure?

THE DEFENDANT:   Yes, I am.

THE COURT:  How familiar are you with them sir?

THE DEFENDANT:   Well, I'm familiar enough where I can proceed.

THE COURT:  Sir –

THE DEFENDANT:   I'm familiar with the hearsay rules; I'm familiar with the witness rules; competent evidence; relevant evidence under Rule 401 in reference to what's relevant, what's not.  As far as 201, judicial notice by the court.  1003 copies should be admissible in lieu of the original.

And, you know, I would like to direct the court's attention in reference to time.  There was an order issued by this court September 3rd, which I terminated Mr. Lynch as he made we me aware of it.  And after a review of that order, it would –

16

(1:03 CR 341)

supposedly the time limits will run out even before the order was entered into the record.  So as far as – and then in reference to Mr. Lynch and some type of ex parte communication going on in reference to defense counsel not being a defense in this case, you know, that was no knowledge of mine.  There is no transcript of that.

THE COURT:  Mr. Thrower, I mean, let's be candid with one another here.  First of all, it's obvious to me that you are a bright man, but if you have any native intelligence, it is going to take more than that, much more than that to represent your interest in this case.  This is a serious matter.  You are going to be at an extreme distinct disadvantage in trying to defend yourself in this case.  You would be far, far better off in the hands of a trained attorney, someone who knows federal law, someone knows how to try a case, how to present a case to a jury.

The issues here are difficult issues.  The consequences are enormous to you personally.  Because if indeed you are convicted, as I think you know, the sentencing guidelines that will apply give not a whole lot of latitude to a judge in this case.  And there are 32 counts.  This is not a simple – and I'm repeating myself – this is not a simple matter, this is not a simple indictment, this is not something we are facing six months, a year.  Potentially, if this matter is presented to a jury and they are convicted of these charges, sir, you are facing, any, many – potentially many, many years in prison.

Now I encourage you, encourage you to think about that, and think about whether or not your case – or you would be better served by having this case in the hands of someone schooled to represent your interests.  There will be specific rules that need to be put in place regarding examination of witnesses.  If you wish to testify, there is another process that needs to be followed.

I'm telling you things that, again, to try to call your attention to the difficulty you are placing yourself in trying to represent yourself in this case.

17

(1:03 CR 341)

<blockquote>There is an old adage, did you hear the odd adage about someone representing themselves having a fool for a client?  Have you ever heard that, sir?</blockquote>

THE DEFENDANT:  It's my opinion that that was coined by a lawyer.

THE COURT:  Well, it may have been, but it has been my experience, sir, that is an adage that probably bears a great deal of truth.

THE DEFENDANT:  Will first of all, under Fomar versus California, I have an absolute right to represent myself.  I'm not waiving on that right at all.

As I said, I did a federal tax trial up in Cleveland that was under the Federal Rules of Civil Procedure.  I've had a lot of experience with a lot of law over the years, okay?  I've won a lot of criminal appeals, civil appeals for individuals.  I'm familiar with the Rules of Evidence, the Criminal Rules of Evidence.

I've terminated this attorney.  I have motions that I would like to have ruled on in reference to dismissing the indictment, and to my knowledge the U.S. Attorney, they haven't responded to anything.

At the conclusion of the hearing on September 22, the Court granted Mr. Lynch's motion to withdraw and the petitioner's motion to represent himself.

The case was then transferred to the undersigned Judge on October 6, 2003.  A final status conference was conducted on October 6, 2003.  The court addressed the issue of possible testimony by Attorney Lynch and ruled in an order as follows:

<blockquote>5.  Motion regarding testimony of Attorney Robert Lynch.  (Docket # 76).  After some discussion involving this motion as well as the motion of the government to exclude defendant's use of Robert Lynch as an expert (Docket #77), the Court observed that Mr. Lynch would not be permitted to testify as an expert witness, but reserved the issue</blockquote>

18

(1:03 CR 341)

as to whether Mr. Lynch would be permitted to testify on the issue of "Advice of Counsel", which appears to be the defendant's primary purpose in his plan to call as his witness Attorney Robert Lynch.  The Court observed that in its preliminary view, Mr. Lynch's testimony in the context of "advice of counsel" would be fact testimony and not expert witness testimony.  As a consequence, the Court delayed a ruling on Docket #76, but GRANTED the Government's motion as to Docket #77.

During the trial, the Court addressed the issue of whether Robert Lynch would be permitted to testify and held that the defense of "advice of counsel" would not be permitted after listening to testimony of Attorney Robert Lynch[10].

### VI.  The Petitioner's Grounds for Relief that Relate to the Issue of Counsel

The petition contains 12 grounds for relief.  The great majority of the grounds relate to petitioner's basic claim that he was denied the effective assistance of counsel.[11]

---

[10] . The testimony is reflected in Volume 6 of jury trial, docket 235 and begins at 1422.  That portion of the transcript begins at page 1422 and concludes with the Court's ruling at page 1430 and is attached hereto as Appendix 4.  See Footnote 6 for the Court's written opinion.

[11]

| | |
|---|---|
| Ground #1 | Defense of counsel was constitutionally ineffective because ex-defense counsel advised Petitioner to represent himself and withdrew from case to testify in "advice of counsel" defense. Petitioner claims his wavier of counsel was unknowing, unintelligent and involuntary and based on the belief the "advice of counsel" defense was valid.  Petitioner claims he was prejudiced and he would not have represented himself and sought a plea agreement if he had known the defense was not viable. |
| Ground #2 | Standby counsel was constitutionally ineffective for not objecting and the trial court erred by not dismissing the charges based on a interpretation of 11 U.S.C. §110 (b)(2) –> Signing of bankruptcy petitions and "reasonable cause" not to sign. |
| Ground #3 | Standby counsel was constitutionally ineffective for not objecting and the trial court committed error when it directed the jury to find who was the preparer of the bankruptcy petitions, when said question is a matter of law. |
| Ground #4 | Standby counsel was constitutionally ineffective for not objecting and the trial court committed error based on a jury question. |
| Ground #5 | The trial court erred it allowed (1) a non-attorney bankruptcy clerk to testify about bankruptcy law and (2) not allowing Petitioner to cross examine the bankruptcy clerk about 11 U.S.C. § 110(b)(2), regarding reasonable cause.  Claims standby counsel was constitutionally ineffective for not |

(continued...)

19

(1:03 CR 341)

### A.  Standby Counsel Allegations (Grounds 2 - 5 and 8 - 11)

In Grounds 2-5 and 8-11 of Petitioner's action for habeas relief, Petitioner alleges his standby counsel was constitutionally ineffective at trial for not objecting to various issues at trial and misleading Petitioner about his defense strategy.  As a matter of law,  it is well established that a defendant who proceeds pro se cannot later claim ineffective assistance of standby counsel.  "As a rule, a defendant who chooses to represent himself cannot later claim ineffective assistance of counsel."  United States v. Chapman,954 F.2d 1352, 1361 (1991) (citing  Faretta v. California, 422 U.S. 806, 834-35, (1975).  Furthermore, "[t]his court knows of no constitutional right to effective assistance of standby counsel. As the word standby implies, standby counsel is merely to be available in case the court determines that the defendant is no longer able to represent himself or in case the defendant

---

[11] (...continued)
objecting.
.

**Ground #8**     Standby counsel was constitutionally ineffective and trial court committed error when it ordered restitution to victims not affected to the bankruptcy fraud for which Defendant was charged.

**Ground #9**     Standby counsel was constitutionally ineffective for not objecting to the use of enhancements that were illegally applied.

**Ground #10**    Standby counsel was constitutionally ineffective for (1) stating that Petitioner should take the case to trial and not take the offered plea bargain and (2) misled the Petitioner as to the "advise of counsel" defense.

**Ground #11**    Standby counsel was constitutionally ineffective for objecting and Petitioner should be entitled to a new trial and/or acquittal when alleged proof was offered by a non-attorney expert that $250 was a "reasonable fee" for a bankruptcy petition preparer.

**Ground #12**    The alleged waiver of counsel and the decision to represent himself was unknowing, unintelligent, involuntary since it was based on "fraud upon the court" by the U.S. Attorneys Office, the Trial Judge, Ex-Defense Counsel, denying Petitioner of 6th Amendment rights.  Parties were acting in a conspiracy to lead the petitioner to represent himself and rely on an "advice of counsel" defense that was non-existent as a matter of law. Petitioner contends standby counsel was part of the conspiracy by stating "advice of counsel" was the best defense.  Specifically, Petitioner Thrower relies on his correspondence with Lynch as well as his own affidavit.

(1:03 CR 341)

chooses to consult an attorney." United States v. Windsor, 981 F.2d 943, 947, ( 7th Cir. 1992).

"[W]ithout a constitutional right to standby counsel, a defendant is not entitled to relief for the

ineffectiveness of standby counsel." United States v. Morrison, 153 F. 3d 34, 55 (2nd Cir. 1998).

Since Petitioner chose to proceed pro se at trial, Petitioner has no right to allege claims of ineffective

assistance of standby counsel. Therefore, Petitioner's claims of ineffective assistance of standby counsel

in Grounds 2-5 and 8-11 are without merit as a matter of law.

<u>B.  Was the Wavier of Counsel Constitutionally Ineffective - Ground #1</u>

Petitioner now advances the claim in habeas relief that his waiver of counsel was ineffective

because his waiver  was based on his belief that his "advice of counsel" defense was valid.  Arguably,

this issue could have been raised on direct appeal.  It appears too late to first advance this issue in an

habeas action.  Moreover, the petitioner was insistent on his right to represent himself and rejected the

advice of Judge John Adams.  The petitioner was still insistent on his right to represent himself on

appeal and rejected this court's suggestion that appellate counsel be appointed.

If it is determined that the petitioner would not have been able to raise the issue as outlined in

Ground One on direct appeal but was limited to an action under the provisions of 28 U.S.C. §2255,

the court finds that Judge Adams did comply with the suggested procedures as published in the Bench

Book for district court judges when the district court judge is confronted with a defendant in a criminal

case  who insists on representing himself in a criminal case.  In the colloquy the petitioner advised Judge

Adams that he was a law student, knowledgeable about the Rules of Evidence and experienced in

representing himself in court.  The petitioner's claim that his waiver was "unknowing, unintelligent and

(1:03 CR 341)

involuntary based on the belief the "advice of counsel defense was valid" is  without merit.   Once a

defendant elects to represent himself, and is properly advised as to the risks inherent in such a decision,

the defendant will not be permitted to claim the waiver was "involuntary" because he was relying on

previous advice from a discharged lawyer.  Moreover, the colloquy between Judge Adams and

Attorney Robert Troll Lynch on September 22, 2003 certainly implies that Attorney Lynch had

reservations about the viability of the defense of "advice of counsel" and he expressed those

reservations in the presence of the petitioner before Judge Adams engaged the petitioner in the lengthy

colloquy set forth in detail earlier in this opinion. (See page 8 supra).

Furthermore, if as suggested by the petitioner that Attorney Lynch advised the petitioner to

represent himself, that advice does not override the subsequent advice given by Judge Adams in the

September 22 colloquy.

The court finds Ground #1 to be without merit.

 C.  Was the Waiver of Counsel Constitutionally Ineffective as claimed in Ground #12?

(1) The Conspiracy claim

In support of his claim of a conspiracy with the intention of leading the petitioner to represent

himself, and in the process, rely on the "advice of counsel" defense, the petitioner charges that the U.S.

Attorney's Office, the Trial Judge, and Robert Troll Lynch were the conspirators.  A reading of his

brief in support of Ground 12 indicates that the term "Trial Judge" refers to Judge John Adams and not

the undersigned Judge.  The petitioner also contends that his standby counsel was a part of the

conspiracy by advising him "advice of counsel" was the best defense.

22

(1:03 CR 341)

The petitioner charges Judge Adams with conspiratorial conduct in his colloquy with the petitioner in the hearing on September 22.   The petitioner has attached numerous letters from Robert Troll Lynch after the lawyer-client relationship ceased which encouraged the petitioner in his reliance on the "advice of counsel" defense.[12]

The court has  studied the transcript of the September 22 hearing and fails to find any suggestion that Judge Adams was engaged in a conspiracy to lead the petitioner to represent himself and rely on the "advice of counsel" defense.   The record is also devoid of any evidence that the U.S. Attorney's Office was a part of the alleged conspiracy.

Possibly sensitive to this lack of proof, the petitioner has recently sought an order permitting discovery and the government initially opposed the request ( Docket #11) but has since filed a supplemental brief (Docket #12) .

The petitioner's request for discovery requests transcripts of tape recorded conversation between the petitioner and Thomas Bowens.  The government contends in its opposition (Docket #11) that the transcripts were turned over to the petitioner as confirmed by the petitioner in a hearing before Judge Adams on October 1, 2003.  The balance of the request for discovery is directed to petitioner's former counsel, Attorney Robert Lynch apparently in an attempt to support petitioner's new claim that Attorney Robert Lynch had either a *per se* or actual conflict of interest.  The government initially

---

[12]  See as Appendix 5 a collection of letters of Robert Troll Lynch attached to the petitioner's brief in support of his petition.

23

(1:03 CR 341)

opposed the motion because the defendant elected to defend himself and waived counsel, and had

failed to disclose any "conflict of interest" on the part of Robert Troll Lynch.

However, the government subsequently filed a supplemental brief with respect to defendant's

motion for discovery and denied that Attorney Lynch was a "target" of an investigation and further

declared that there was no conspiratorial agreements as alleged in Ground 12.  Specifically, the

government's supplemental brief declared:

> For the very reasons that Lynch was precluded from testifying
> as to any advice or legal opinions he had given to the Defendant, that is,
> that the record clearly indicates that the Defendant began his fraudulent
> scheme long before he contacted Lynch, the Defendant's most recent
> assertion that Lynch was a "target" of the government's investigation
> and was involved in the criminal activity, is patently false, and illogical.
> Lynch was never a target, was never charged, and was never even
> interviewed as a subject of this investigation, for obvious reasons
>
> ...
>
> The Defendant blatantly accuses all of these parties of an
> unethical and illegal conspiracy to deprive him of his Constitutional right
> to effective representation of counsel and due process by (1) "tricking"
> him into permitting Lynch to withdraw as his counsel, (2) rejecting the
> government's plea proposal, (3) representing himself, and (4) relying on
> an "Advice of Counsel" defense which, he alleges, all of the parties
> knew to be a "false" and "void" defense.  On course, the Defendant is
> unable to offer any evidence even remotely supporting this reckless and
> dubious conjecture.  It goes without saying that no such agreements or
> understandings existed between any of the parties impugned by this
> allegation, and it is fairly obvious that such a conspiracy, as fabricated
> here, would have little practical chance of success, in any event.
>
> That the Defendant has co-opted the language of the Williams
> opinion to customize a "factual" scenario from which he could then

(1:03 CR 341)

fashion an "actual conflict of interest" argument is fairly obvious.  The illogical and nonsensical essence of his claim is equally obvious.

The petitioner has filed a response to the Government's supplemental response in opposition to the petitioner's motion for discovery.  (Docket # 13) .  The petitioner continues to argue that Robert Lynch had an actual conflict of interest, apparently because of his ambivalent position on the availability of the  "advice of counsel" defense.  Mr. Lynch's ambivalence does not support petitioner's claim of "actual conflict of interest."

In the absence of any proof of the "alleged conspiracy" and in view of the petitioner's insistence on his right to defend himself which included his request that his consulting attorney at trial not even be at the trial table, the court declines to order discovery as to the alleged "conflict of interest " on the part of his former retained attorney, Robert Troll Lynch.

(2) The motion for remand for re-sentencing based on the teachings of United States v Williams, 372 F.3d 96 (2nd Cir. 2004)

In his subsequent pleadings, the petitioner asserts the alternative claim that he is entitled to a remand for re-sentencing.  He depends upon the teachings of Williams, supra.  By inference, the petitioner seems to be of the belief that he is now entitled to a re-sentencing based on the government's pretrial written guilty plea offer as discussed in footnote number three herein.

 In Williams, supra, the court addressed the issue of attorney/client conflict of interest.  In that case, the defendant was convicted on numerous counts of drug related activity and sentenced to life imprisonment.  Id. at 99-102.  On appeal, the defendant argued a violation of his Sixth Amendment rights, alleging his pretrial counsel had a conflict of interest, which hindered him from entering into a

25

(1:03 CR 341)

cooperative plea agreement.  Id. at 102.  Defendant's pretrial counsel was found to be involved in

illegal firearms transactions with the defendant as well as being guilty of facilitating murder, money

laundering, and drug trafficking.  Id. at 101.  The defendant argued that because his counsel was

involved in criminal activity along with the defendant, the counsel had a personal interest in not allowing

the defendant to enter into a plea agreement with the government in return for information.  Id. at 99.

Specifically, the Williams court outlined the three categories of attorney conflicts of interest, per

se conflicts, actual conflicts and potential conflicts, which can violate a defendant's Sixth Amendment

rights.  In terms of the first category, per se conflicts of interest, these conflicts are seen as so severe

that they are per se violations of the Sixth Amendment and require an "automatic reversal without a

showing of prejudice." Id. at 103 (quoting United States v. John Doe #1, 272 F.3d 116, 125).   Per se

conflicts arise in two situations, when trial counsel is not authorized to practice law or where trial

counsel is involved in the same or closely related criminal activity as the defendant.  Id.  However, the

court noted, in many cases the per se rule has only been applied  when the client was unaware of the

conflict.  Id. at 105.  In terms of the second category, actual conflict of interest, such conflicts arise

when the interests of the attorney and the defendant differ on material legal and/or factual issues or on

the legal strategy to be implemented.  Id. at 102.  "Once an actual conflict of is established, a defendant

need not prove prejudice, but simply that a lapse in representation resulted from the conflict." Id. at 105

(internal quotations omitted) (quoting United States  v. Malpiedi, 62 F.3d 465, 469 (2nd Cir. 1995).

To establish a lapse of representation, the defendant must prove a legitimate alternative legal defense

could have been pursued, but was not due to the conflicted interest of defendant's attorney.  Id.

26

(1:03 CR 341)

Finally, in terms of potential conflicts of interest, the <u>Williams</u> court found such conflicts to occur when the interests of the defendant may place the attorney with inconsistent obligations.

Beyond addressing the three categories of attorney/client conflict, the <u>Williams</u> court addressed the issue of waiver of the right to conflict-free counsel.  In terms of per se conflicts, the court found such conflicts to be  unwaivable by the defendant because of the serious nature of the conflict.  In terms of cases were the conflict of interest is actual or potential, the court stated the client can waive his right to conflict-free counsel.  For such a waiver, all that is required is the defendant be knowing, intelligent and that the conflict not be so serious that no rational person would waive conflict-free representation.  <u>Id.</u> at 107-108

Ultimately, the <u>Williams</u> court held that the defendant's Sixth Amendment rights had been violated due to defense counsel's actual conflict of interest. To remedy the violation, the court remanded the defendant's case back to the District Court to be resentenced, with an emphasis on producing an outcome similar to what the defendant would have received had his counsel not been conflicted.  <u>Id.</u> at 111.

After a careful study of the record and the government's supplemental response to the petitioner's request for discovery, the court finds no evidence that would support an application of <u>Williams</u> to the petitioner's case.  The record, including the letters of Lynch to the petitioner as set forth in Appendix 5 suggests an ambivalence on the part of Lynch as to the viability of the "advice of counsel" defense.  However, the record fails to indicate that Attorney Lynch suffered from either a "per se" or an actual conflict of interest in the context of his initial representation of the petitioner that would

27

(1:03 CR 341)

justify a <u>Williams</u> remand for re-sentencing.  In any event, the petitioner elected to represent himself and rejected Judge Adams's suggestion of appointed counsel and even resisted the attempt of Judge Adams to appoint consulting counsel[13].

       In sum, the court finds Ground 12 to be without merit.

---

[13]  With respect to the appointment of standby counsel, the transcript of the September 22, 2003 hearing reflects the following exchange between Judge Adams and the petitioner:

       THE COURT: Here is what we'll do.  The court will find, after this discussion, that the defendant has knowingly and voluntarily waived his right to counsel.  And despite my admonitions to him, and my warnings to him about the difficulties of representing himself, I will allow Mr. Lynch to withdraw.  I will permit Mr. Thrower to represent himself.  The court will appoint standby counsel to be part of this case, to provide consultation to the defendant and to assist him, and to replace the defendant if the court detemines during the trial the defendant can no longer be permitted to proceed pro se.  That's the appropriate way to proceed in this case, make sure the matter proceeds in an orderly fashion.

       Mr. Thrower, I'll advise you post haste when I make that appointment so that individual will be known to you.

       THE DEFENDANT: First of all, I would object to standby counsel, and totally.  And number two, I would like not to have standby counsel sitting at my table, as justice – one of the Supreme Court Justices said in reference to in Fomar versus California, that that is viable strategy to not have any other attorneys sit at the table.

       And that, first of all, I would totally object to any other any standby counsel; and number two, as an order that no counsel would be at my table.

(1:03 CR 341)

VII.  Conclusion.

As the court finds no merit in any of the twelve grounds asserted, the petition for habeas relief in denied in its entirety.[14]

IT IS SO ORDERED.

| | |
|---|---|
|   June 16, 2005 |    */s/ David D. Dowd, Jr.* |
| Date | David D. Dowd, Jr. |
| | U.S. District Judge |

---

[14] The Court has written a lengthy opinion and included many appendices in an attempt to assist the reviewing court in the event of a probable pro se appeal.

29